**In the Matter of the BOHACK CORPORATION, Debtor.**

**Nos. 78 C 727 (74 B 933).**

United States District Court,
E. D. New York.

May 12, 1978.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Joseph Binder; Jay G. Strum, New York City, of counsel.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Creditors' Committee; Albert J. Togut, New York City, of counsel.

Finkel & Goldstein, New York City, Co-Attys., for Creditors' Committee; Neal M. Rosenbloom, New York City, of counsel.

Memorandum of Decision and Order

MISHLER, Chief Judge.

The Creditors' Committee (the "Committee") of the Bohack Corporation ("Bohack") and Joseph Binder, a former officer of Bohack, appeal from the orders of Bankruptcy Judge Albert Parente entered on February 3 and February 24, 1978.

On July 30, 1974, Bohack filed a petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* Thereafter, a plan of arrangement was formulated by Bohack, and the Committee is currently conducting an investigation of the debtor's financial condition to assist the court in determining whether the proposed plan is feasible and in the best interest of the creditors. In connection with this investigation, several of Bohack's employees have been examined by counsel for the Committee.

Upon application of the Committee, the bankruptcy court ordered the examination of Joseph Binder pursuant to Section 21a of the Bankruptcy Act, 11 U.S.C. § 44(a).[1] Binder was the President of Bohack when the petition was filed and served in that capacity through the spring of 1976. On

---

1. This section provides in relevant part:

   The court may, upon application of any officer, bankrupt, or creditor, by order require any designated persons, including the bankrupt . . . to appear before the court . . . to be examined concerning the acts, conduct or property of a bankrupt . . . . .

August 9, 1977, Binder appeared for examination; when asked by counsel for the Committee whether he was President of Bohack, he refused to respond, asserting his Fifth Amendment privilege against self-incrimination. By opinion and order dated February 3, 1978, Judge Parente ordered Binder to answer the propounded question, finding that the response could not possibly tend to incriminate him. The examination resumed on February 24, 1978. Once again, Binder declined on Fifth Amendment grounds to answer this question, along with a series of other questions posed by counsel for the Committee. Judge Parente sustained the witness's refusal to answer thirty-five questions; with respect to the remaining twenty-five, he ordered the witness to respond on the basis that the demanded information would not tend to incriminate him.

Both parties now appeal from these orders. The Committee appeals from the February 24th rulings which sustained Binder's assertions of the constitutional privilege. Binder appeals from both the February 3rd order and the February 24th rulings which rejected his claims of self-incrimination. In support of his refusal to testify, Binder argues that he is the target of criminal investigations presently conducted by the SEC and the United States Attorney's office for the Eastern District of New York, and that disclosure of the information sought by the Committee would furnish evidence that might be used against him in these criminal proceedings. The Committee's position is that Binder should be designated to perform the duties of the debtor pursuant to Section 7b of the Bankruptcy Act, 11 U.S.C. § 25(b), and thereby granted the immunity of Section 7a(10) of the Act, 11 U.S.C. § 25(a)(10). Since the

immunity afforded by the latter provision is coextensive with the scope of the privilege, *United States v. Dornau*, 491 F.2d 473, 480 (2d Cir. 1974), Binder may no longer refuse to testify on Fifth Amendment grounds.

## DISCUSSION

We agree with the Committee that Binder should be designated under Section 7b to perform the duties of the debtor and thereby compelled to testify under the protective immunity of Section 7a(10). This procedure is fully consonant with, and would best implement, the Congressional policy which underlies the statutory grant of immunities to bankrupts: to encourage a full disclosure of the affairs of the debtor and thereby insure a proper administration of the estate, whether the goal be distribution or, as in the instant proceedings, rehabilitation.[2]

Section 7a of the Act, 11 U.S.C. § 25(a), outlines the duties of a bankrupt; relevant to this appeal is the obligation imposed by subdivision (10), which provides in pertinent part:

The bankrupt shall at the first meeting of his creditors . . . *and at such other times as the court shall order*, submit to an examination concerning the conducting of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabout of his property, and, in addition, all matters which may affect the administration and settlement of his estate . . . ; but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding. . . . (emphasis added).

Where the bankrupt is a corporation, "its officers, . . . directors, . . .

---

**2.** To encourage complete disclosure by the bankrupt of his affairs, Congress broadened the scope of immunity granted by Section 7a(10) in 1970 (§ 207 of the Organized Crime Control Act of 1970) to include "any evidence that is directly or indirectly derived from such testimony." Thus, the immunity now bars, *in toto*, use of the Fifth Amendment privilege. As stated in the House Report, Congress intended by the Amendment to achieve "effective displacement of the privilege against self-incrimination by granting protection coextensive with the privilege" in order to enable bankruptcy courts for the first time to compel the testimony of witnesses who refuse to testify on Fifth Amendment grounds. H.Rep.No.1549 on S. 30, 91st Cong., 2d Sess. 32–33 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News, pp. 4007, 4008; *see also United States v. Dornau, supra* at 480.

stockholders, or such of them as may be designated by the court, shall perform the duties imposed upon the bankrupt." Section 7b, 11 U.S.C. § 25(b). These duties include the obligation to submit to examinations ordered pursuant to section 7a(10), and, like the individual bankrupt, the corporate representative is entitled to the immunity granted by that section. *United States v. Castellana,* 349 F.2d 264, 273–74 (2d Cir. 1965); *United States v. Weissman,* 219 F.2d 837, 841 (2d Cir. 1955).

The fact that Binder is a former officer of Bohack does not render him ineligible for designation under 7b. Rather, the significant point is that Binder served in that position of authority during the period under investigation. One of the major objectives of the Committee's examination was to determine why Bohack suffered massive inventory losses between 1974 and 1975; as a fiduciary of the debtor during these critical years, Binder would obviously have valuable information with respect to this inquiry. Examinations of a bankrupt's affairs will ordinarily concern transactions that occurred prior to the filing of the petition, *see* 1A Collier on Bankruptcy 1016 (4th ed. 1976), and thus where the bankrupt is a corporation, only *former* officers and directors would have the direct knowledge sought by a 7a(10) examination. This observation was recently made in *THC Financial Corp.,* 446 F.Supp. 1337 (D.Hawaii 1978), where the court in a Chapter X reorganization proceeding granted a trustee's application to designate a former officer and director to perform the duties of the debtor pursuant to 7b:

> The purpose of those provisions is to find out what occurred to bring the corporation into a bankruptcy condition. If for-

mer directors and officers may not be required to testify for the corporation there would almost certainly be large gaps in the information gathered. Where a Chapter X trustee has been appointed there normally will in fact be *no* officers and directors still serving as such, they will *all* be "former." If such "former" fiduciaries could not be required to testify, the provisions in question would be rendered nugatory at the very moment when Congress must have intended that they apply in strictest fashion. Such a result is absurd; therefore such an interpretation cannot be correct. Bankruptcy law will not be given to so limiting a construction as to permit evasion of its purpose. *Id.* at 1338.

*See also Greene v. Harris,* 240 F.2d 275 (2d Cir. 1957) (de facto president who resigned his office two weeks prior to corporation's bankruptcy was ordered to perform the duties of the bankrupt); *In re Bell Refrigeration Corp.,* 169 F.Supp. 62 (N.D.Ohio 1958) (former officer who held his position when Chapter XI petition was filed must submit to examination in hearing upon creditors' objections to confirmation of the plan of arrangement); *In re Totem Lodge and Country Club,* 134 F.Supp. 158 (S.D.N.Y.1955) (former officer and director and sole stockholder when the corporation was adjudicated bankrupt held to be eligible for designation under 7b).[3]

Finally, once designated to perform the duties of the debtor under 7b, Binder will be entitled to the immunity provided by 7a(10) notwithstanding the fact that his examination was ordered pursuant to Section 21a of the Act, 11 U.S.C. § 44(a). As stated by Collier:

---

**3.** Were it not for *United States v. Castellana, supra,* which this court is bound to follow, we would order Binder to testify under the immunity of 7a(10) notwithstanding the fact that he has not been formally designated to perform the duties of the bankrupt under 7b. However, the majority in *Castellana* held that the Section 7a(10) grant of immunity applies "only if the director or shareholder is specifically designated to perform the bankrupt's duties" and that "[a] meaningful distinction . . . should be drawn between the corporate officer who testi-

fies voluntarily and thus cannot claim the privilege and the one who, having been *directed* to appear by the bankruptcy court, has thereby been 'designated by the court to perform the duties imposed upon the bankrupt by this title.' " *Id.* at 273–74. We agree with Judge Hays who, in his dissent, suggested that the privilege should not depend on the "technical concept" of designation, since the purpose of 7a(10) is to encourage officers, directors and stockholders to testify freely and fully as to pre-bankruptcy corporate activities.

It seems clear that the bankrupt, where he is compelled to testify on examination under § 21a, should be accorded the same protection as to the use of his testimony that is given him under § 7a(10) . . . [A]s stated previously, § 7a(10) read together with § 21a, gives the court the necessary power to order an examination of the bankrupt at any time. There is no good reason for differentiating between the examination of a bankrupt under § 21a and his examination . . . under § 7a(10). 2 Collier on Bankruptcy 315–16 (14th ed. 1976).

And in *Goldberg v. Weiner*, 480 F.2d 1067, 1070 (9th Cir. 1973), the bankrupt refused to answer questions on Fifth Amendment grounds at an examination ordered under Section 21a. On appeal, the bankrupt argued that the immunity granted by Section 7a(10) did not apply to testimony given at a 21a examination. The Court of Appeals rejected this contention, and, quoting the language of 7a(10), held that "[w]e see no reason why such an examination [21a] does not fall within the class of examinations held 'at such other times as the court shall order,' referred to in Section 7a(10)." *Accord, United States v. Weissman, supra* at 841.[4]

The proceeding is remanded to Bankruptcy Judge Parente. Judge Parente is directed to designate Binder to perform the duties of the debtor under Section 7b of the Act, 11 U.S.C. § 25(b). Once designated, Binder is ordered to answer the questions propounded at the August 9th and February 24th examinations, and it is

SO ORDERED.

4. The correlation between Sections 21a and 7a(10) is best illustrated by Bankruptcy Procedure Rule 205. Subdivision (d) of that rule defines the scope of all examinations ordered under the Act. Thus, whether the witness be a third party, or the bankrupt himself, the examination may relate only to "the acts, conduct, or property of the bankrupt, or to any matter which may affect the administration of the bankrupt's estate . . . ." *See* Advisory Committee's Note, Rules Bankr.Proc. Rule 205, 11 U.S.C.